DECISION
This appeal concerns certain real property assessments for the 2007-08 tax year. The property is identified as Account 119138.
A trial was convened February 17, 2009. Robert S. Lovlien, Attorney at Law, represented Plaintiff; Theresa Maul, Chief Appraiser, represented Defendant. Subsequently, written arguments were filed; the record closed March 3, 2009. The majority of facts and arguments were submitted in writing; the parties request a decision be issued based on that collection of facts and arguments. Minimal testimony was adduced at trial.
The real market values (RMV) set by the Deschutes County Board of Property Tax Appeals (BOPTA) and those urged by the parties are as follows:

Land RMV Structures RMV Total RMV
BOPTA $520,000 $170,590 $690,590
Complaint $538,000 $ -0- $538,000
Answer $715,000 $70,000 $785,000
Plaintiff @ Trial $320,262 $ -0- $320,262
Defendant @ Trial $721,158 $170,590 $891,748
 *Page 2 
At trial and in its later submissions, Defendant asks the court to increase the total RMV over $200,000 more than that set by BOPTA.
 I. STATEMENT OF FACTS
Plaintiff's property is located in Bend, Oregon, east of Pettigrew Road and south of Bear Creek Road. The area is 1.55 acres gross, 1.39 acres net and contains one house and one outbuilding. The property is identified as tax lot 181203AA 1300 and Account 119138. (Stip Facts at 1.)
The parties submitted a map delineating Plaintiff's property, associated encumbrances to development, and adjacent developments. The dimensions of the property are 126.66 feet on the east, 368.63 feet on the south, 137.49 feet on the west, and 366.88 feet on the north. (Stip Facts at 1.)
Historically, Plaintiff's property totaled 4.87 acres. In January of 2006, Plaintiff sold 3.33 gross acres (2.59 net acres) for $767,250 ($230,405/acres gross, $296,235/acres net). That was a competitive process involving three other properties sold to a single developer. Plaintiff's land was reappraised for tax year 2007-08 based on partition plat PP2006-01 and recorded January 6, 2006, pursuant to ORS 308.156. (Stip Facts at 1.)
Plaintiff's RMV for tax year 2006-07 was $183,690. Tax year 2007-08 RMV was valued at $891,748, an increase of $708,058 or 485 percent. The property tax for tax year 2006-07 was $2,674.37. The proposed property tax for tax year 2007-08 is $7,104.60, an increase of $4,430.23 or 265 percent. The $183,690 was an allocated value based on 4.87 acres as of January 1, 2006. (Stip Facts at 2.) *Page 3 
Plaintiff filed an appeal with BOPTA. BOPTA reduced the RMV from $891,748 to $690,590 and the assessed value (AV) from $474,590 to $388,100. Property taxes were reduced from $7,104.60 to $5,809.86. (Stip Facts at 2.)
Plaintiff had a second appraisal done by Chuck Lewis Appraisals that valued the property at $510,000 in March of 2008. (Stip Facts at 2.)
Plaintiff had an appraisal performed by Kevin Halligan, Appraiser, State Certification #CR00054. That appraised value was $538,000 by sales comparison approach in September 2007. (Stip Facts at 2.)
Plaintiff's property is encumbered by an irrigation canal easement that is 30 feet in width. The canal bisects the property, north to south, approximately 45 feet from the eastern boundary. (Stip Facts at 2.)
The survey filed for partition plat 2006-01 indicated a five foot square easement for the telephone company in the southwest corner of the property. The easement contains a major service box for the region. The service box would need to be moved to allow access to the property from Pettigrew Road. (Stip Facts at 2.)
Plaintiff's property could provide only a half-road (30 foot width) to connect Kayla Court, an existing full road to Pettigrew Road. (Stip Facts at 3.)
The parties submitted a County Land Sale Study of dividable properties under three acres in size. From that data, the county used a calculated value of $514,862 per acre. (Stip Facts at 3.)
The Appraisal Worksheet submitted to BOPTA contains two calculated values for Plaintiff's property: (1) $715,658 derived by multiplying Plaintiff's acreage by the $514,862 per acre value; and, (2) $734,400 derived by calculation by the Assessor's Office that determined the *Page 4 
number of lots, the value of the lots, development costs, and a "risk 
profit" factor that is subtracted from the net calculation. Those are land values only and do not include structures or site development. (Stip Facts at 3.)
 II. ANALYSIS
The issue in this case is the RMV of the subject property as of the January 1, 2007, assessment date. From the inception of this case, the parties have presented fluid, changing RMV estimates. Plaintiff now seeks a $370,328 overall reduction. Defendant seeks a $201,158 overall increase.
 As a starting point, ORS 308.205(1)[1] defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
"The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 *3 (Mar 26, 2003).
The characteristics of the subject land clearly impact its value. The substantial easements and a potential buffer requirement serve to reduce the utility of the land. Also, roadway development would require obtaining adjacent land.
Defendant valued the land based more on a mass appraisal type focus. The large-scale sales study, including diverse locations, does not necessarily reflect the condition of Plaintiff's land as of January 2007.
In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key *Page 5 
component in evaluating properties. According to Appraisal Institute, TheAppraisal of Real Estate 307 (13th ed 2008):
 "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."
Informed buyers consider a number of factors relevant in an arm's-length transaction, including size, location, year of construction, and condition of the premises. See ORS 308.205. Valuing a property based on sales of comparable properties is "well accepted." SeeWard v. Dept. of Revenue, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). However, "[b]ecause sales are seldom comparable in every detail, adjustments must be considered which reflect differences." Id.
(citations omitted). Raw, unrefined price information is not enough.
Under the limited facts presented in this case, the court cannot place major reliance on Defendant's land study data. There are too many variables that are unexplained or not supported by substantial evidence.
Plaintiff in this case included no value for the improvements. Those consisted of a single-family residence of 2,246 square feet. It was updated in the mid-1990s. Plaintiff contends "the house would most likely be demolished in order to develop the land." (Ptf's Ex E.) No support was offered for that assertion. Potential demolition costs are not considered. Moreover, Plaintiff's two appraisers value the existing improvements at $171,540 to $178,078. The court does not have sufficient evidence to find a $-0-RMV. If this is a matter of future development and highest and best use analysis, the support is not clear in this record.
The value range between the parties is substantial and has changed many times. In this situation, each party has the burden of proof as to the specific value sought and must establish its case by a "preponderance" of the evidence. See ORS 305.427. A "[p]reponderance of the *Page 6 
evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. of Rev., 310 Or 260, 265,798 P2d 235 (1990). Plaintiff has not met that statutory requirement. Neither has Defendant in its request for an RMV increase. Accordingly, the values on the rolls must be sustained and the appeal denied.
 III. CONCLUSION
The court concludes that the parties have failed to establish any errors in the record assessment by a preponderance of the evidence. Now, therefore,
IT IS THE DECISION OF THIS COURT that the current assessment of the subject property, identified as Account 119138, is hereby sustained for the 2007-08 tax year. The values set by BOPTA shall remain undisturbed.
Dated this ____ day of September 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Jeffrey S. Mattson on September25, 2009. The Court filed and entered this document on September 25,2009.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005. *Page 1